UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GELISHIA N. HARRIS | * | CIVIL ACTION |
| VERSUS | * | NO. 24-2935 |
| AMERICAN COMMERCIAL BARGE LINE | * | CONMAG DIV. (2) |

## ORDER AND REASONS

Pending before me is Defendant American Commercial Barge Line's motion for summary judgment seeking dismissal of Plaintiff Gelishia Harris's Title VII claims. ECF No. 32. Plaintiff filed an Opposition, and Defendant filed a Reply. ECF Nos. 41-42. No party requested oral argument in accordance with Local Rule 78.1, and the Court agrees that oral argument is unnecessary.

Considering the record, the submissions and arguments of counsel, and the applicable law, Defendant's motion for summary judgment is GRANTED for the reasons stated herein.

## I.    BACKGROUND

The factual background is based on the statements of material facts filed by the parties.[1]

Defendant American Commercial Barge Line ("ACBL") is a marine transportation and logistics company that employs dispatchers whose function is to coordinate barge and fleet boat dispatches, communicate with customers regarding barge status, and track shipping data. ECF No. 32-2 ¶¶ 1-4. ACBL employs eight dispatchers to cover two sets of fleets, with 24/7 coverage by

---

[1] Defendant filed a Statement of Undisputed Material Facts listing 79 items. ECF No. 32-2. Although Plaintiff filed a Statement of Contested Material Facts listing 6 items, she does not controvert any of Defendant's asserted undisputed facts nor does she attach any evidence that contradicts same. Rather, Plaintiff raises 6 questions (i.e., whether Plaintiff established a prima facie case, whether Plaintiff was subjected to a hostile work environment, whether Plaintiff was denied a promotion based on race, etc.). *See* ECF No. 41-2. The only other document submitted by Plaintiff in opposition is a 4-page deposition excerpt from Plaintiff's former supervisor Ryan Phillips. ECF No. 41-3. Even that excerpt does not conflict with any of Defendant's asserted undisputed facts.

1

dispatchers working day or night shifts on a 7-days on, 7-days off basis.  *Id.* ¶¶ 5-11.

Plaintiff Gelishia Harris worked at ACBL from 2016 until her discharge on May 13, 2024. ECF No. 32-2 ¶¶ 12, 70.  She began as an Administrative Assistant until Ryan Phillips (Director of Fleet Operations) hired her as a Traffic Assistant on August 28, 2017; Phillips later promoted her to Associate Dispatcher 2 in October 2017, where she initially worked the night shift and moved to the day shift in 2021.  *Id.* ¶¶ 12-17; *see also* ECF Nos. 32-11, 32-13, 32-14.  Phillips served as Plaintiff's direct supervisor from August 2017 through her termination.  ECF No. 32-2 ¶ 14.

Neither party submitted any evidence reflecting issues or complaints between 2016 and September 2023.  On September 6, 2023, Plaintiff called ACBL's human resources manager (Lisa Swan) to complain that information from her confidential employee engagement survey was disclosed to her co-workers (specifically, that a co-worker's ringtone used the N-word).  ECF No. 32-2 ¶ 18.  During a meeting to address that concern, Plaintiff reported that a co-worker's ringtone used the N-word, provided an audio recording of the ringtone on October 25, 2023, and made several other complaints (e.g., her computer was bugged, office video cameras recorded audio, supervisor Phillips would not talk to her or promote her because she refused to talk about her personal business).  *Id.* ¶¶ 18-23, 29-30; ECF No. 32-6 at 1.  Swan and several other employees listened to the audio recording[2] but could not hear the N-word.  ECF No. 32-2 ¶¶ 24-26.

Swan investigated further.  ECF No. 32-9 at 3-5.  She questioned the relevant employee about the ringtone, and he explained it was a publicly available ringtone from the video game

---

[2] ECF No. 32-3 (Ex. 1A).  Defendant included a manual attachment of the audio recording.  ECF No. 32-3.  The Court listened to the audio, but did not hear the N-word.  Nor did the Court hear "listen Linda."  *See* ECF No. 32-2 ¶ 27. Based on the assertion that the ringtone was from the Zelda video game, a clearer audio of a ringtone was located, which sounds like the one on the audio recording.  It says, "Hey, Listen."  *See* YOUTUBE SOUND EFFECTS, [*Zelda*] *NAVI – HEY LISTEN! Sound Effect* (Youtube, July 4, 2017), https://www.youtube.com/watch?v=P55sOvmHOvs.

Zelda. ECF No. 32-2 ¶ 27. Swan concluded that Plaintiff's complaint regarding the ringtone's use of the N-word was unsubstantiated. ECF No. 32-9 at 24. Swan also investigated Plaintiff's other complaints (e.g., computer bugged), with IT and third-party assistance. ECF No. 32-2 ¶ 31. The investigation did not support Plaintiff's claims that co-workers were recording her (though Plaintiff admitted to secretly recording her co-workers),[3] but did find other complaints (e.g., sharing management information from the engagement survey, sounds on two cameras) partially substantiated. *Id.* ¶¶ 31-32; *see also* ECF No. 32-5 at 3-4.

When Plaintiff accused Swan of treating her unfairly and covering for the office, ACBL assigned in-house counsel Ben White to investigate. ECF No. 32-2 ¶¶ 33-34. He met with Plaintiff and interviewed six other employees, all of whom denied that the ringtone used the N-word and reported that Plaintiff had a bad attitude, did not handle criticism, was a bully and the aggressor in an argument with her supervisor Phillips. *Id.* ¶¶ 35-39. Plaintiff filed an EEOC charge on March 1, 2024. *Id.* ¶ 41.

On March 11, 2024, a co-worker (David Carbo) brought muffins to the office and invited Plaintiff to the kitchen for a muffin. *Id.* ¶¶ 42-44.[4] Plaintiff refused to go, asserting that another employee (Hunter Wells) wanted to clone/hack her phone and that Carbo was a liar; she reported the incident to the police. *Id.* ¶¶ 42-46; *see also* ECF No. 32-3 (Exhibit 1C).[5] Carbo complained about Plaintiff's conduct to HR, and both he and Wells provided written statements indicating they no longer felt safe working in the office with Plaintiff. ECF No. 32-2 ¶¶ 47-49. ACBL instructed Plaintiff to work remotely. *Id.* ¶ 50. That same day, Plaintiff reported to Phillips that another co-

---

[3] ECF No. 32-5 at 2, 8.

[4] Although Plaintiff asserts that she filed an EEOC charge on October 9, 2023 (ECF No. 41-1 at 2), she provides no evidence establishing same. Defendant, however, attaches the March 1, 2024, EEOC charge. ECF No. 32-8 at 94-95.

[5] The police body camera footage reflects Plaintiff reporting the alleged cloning of her phone and emails to a police officer during which Plaintiff states that she previously reported same to the FBI and St. James Parish police. ECF No. 32-3 (Exhibit 1C).

worker (Stewart) was modifying documents and interfering with her work, but when reviewed, the document's meta data indicated that Plaintiff made the changes and attempted to blame her co-worker. *Id.* ¶¶ 51-55.

On April 30, 2024, Plaintiff notified supervisor Phillips that she was ill, and when he texted her later that day and the next to determine whether she needed coverage, she failed to respond, so he arranged for coverage. *Id.* ¶¶ 56-63. When Plaintiff responded on Thursday morning, she indicated that she did not need coverage, had not indicated she was ill on the subsequent days, and instructed supervisor Phillips to call, not text, her. *Id.* ¶¶ 63-66. Supervisor Phillips concluded that Plaintiff's disrespect and antagonism warranted discharge and recommended her termination to HR manager Swan and others on the management team. *Id.* ¶¶ 67-68. ACBL terminated Plaintiff on May 13, 2024. *Id.* ¶¶ 70-71.

Plaintiff alleges that another employee (Katelyn Smith) was promoted to Associate Dispatcher in March 2023 while Plaintiff was not. ECF No. 5 at 5.[6] The career progression is (1) Associate Dispatcher 2; (2) Associate Dispatcher; (3) Dispatcher; and (4) Lead Dispatcher. ECF No. 32-2 ¶ 72. Ms. Smith had a unique position and was not part of the four-man dispatcher teams working 12-hour shifts on a 7-day on/7-day off basis, as was Plaintiff. *Id.* ¶¶ 74, 76, 79; *see also* ECF No. 32-11. Rather, her dispatching duties involved a set of specialized vessels, her job included significant non-dispatch responsibilities such as billing and responsibility for the Tow Works program, and she worked Monday through Friday from 8:00 am to 5:00 pm. ECF No. 32-2 ¶¶ 75-77. None of the 12-hour shift, 7-day on/7-day off dispatchers had those duties. *Id.* ¶ 78.

---

[6] Again, ACBL hired Plaintiff as an administrative assistant in 2016. ECF No. 32-2 ¶ 12. Director of Fleet Operations Ryan Phillips hired her as a Traffic Assistant on August 28, 2017, and later promoted her to Associate Dispatcher 2 in October 2017, where she initially worked the night shift and moved to the day shift in 2021. *Id.* ¶¶ 12-17. Ryan Phillips served as her supervisor from August 2017 through her termination. *Id.* ¶ 14.

## II.   **THE PENDING MOTION**

Plaintiff Gelishia Harris brought this Title VII suit against her former employer Defendant ACBL alleging race discrimination, hostile work environment, and retaliation.  ECF No. 5.

Defendant now moves for summary judgment on the basis that Plaintiff cannot establish severe or pervasive harassment affecting a term, condition or privilege of employment or that the alleged harassment was based on race.  ECF No. 32-1 at 11-18.  Defendant also asserts that Plaintiff's claims for failure to promote and retaliatory performance evaluation are barred for failure to exhaust administrative remedies as the promotion arises from a co-worker's March 2023 promotion and the performance evaluation occurred on February 3, 2023, but Plaintiff did not file her EEOC charge until more than 300 days later (i.e., on March 1, 2024).  *Id.* at 18-19, 21. Defendant also asserts that Plaintiff cannot establish a prima facie case on the promotion because she and the promoted employee had different job duties.  *Id.* at 20.  And she cannot establish the necessary prima facie case for the retaliatory evaluation claim because the only complaint asserted prior to that evaluation was the ringtone issue mentioned in the employee engagement survey, yet Plaintiff has no evidence to establish that her supervisor knew about that complaint when he evaluated her.  *Id.* at 21.  Defendant also argues that, even assuming the timing suffices to establish a prima facie case of retaliation, it had legitimate reasons for termination, and Plaintiff has no evidence to establish pretext as her subjective belief is insufficient.  *Id.* at 22-25.

In Opposition, Plaintiff argues that material fact disputes preclude summary judgment on her claims of discriminatory termination, hostile work environment and failure to promote.  ECF No. 41; No. 41-1 at 1.  She argues that she endured hostility based on her weight and appearance, was subjected to the racially offensive ringtone and remarks (i.e., regarding her hygiene and going to buy a Mercedes because that's what African Americans do when they get money), and was

treated differently than white co-workers when not promoted in 2023 and when hired in 2017 (e.g., she had a probationary period, lower starting salary, and lower performance ratings). ECF No. 41-1 at 2-6. Plaintiff questions whether the audio was authentic but offers no evidence that the audio was different. *See id.* at 6. Plaintiff argues that her status as the only African American employee and allegations of harassment are sufficient to create a material issue of fact. *Id.* at 4-9. Plaintiff argues that her failure-to-promote claim is not time-barred because she filed her EEOC charge on October 9, 2023, but the EEOC deemed it filed on March 1, 2024, and she was more qualified that the employee promoted. *Id.* at 10-11. Plaintiff also argues that she received an unfair evaluation, was discharged in retaliation for making complaints of discrimination, and Defendant's stated reasons are pretextual given the absence of any disciplinary actions in Plaintiff's personnel file. *Id.* at 11-14.

In Reply, Defendant objects to Plaintiff's arguments based on facts not in evidence and speculation. ECF No. 42 at 1. Defendant notes that Plaintiff ignores the retaliatory evaluation claim entirely and, instead, improperly seeks to convert that to a disparate treatment claim. *Id.* at 2-3. Further, it argues that, while Plaintiff bears the burden to establish that her failure-to-promote claim has not prescribed and although she argues that she filed an EEOC charge on October 9, 2023, she provides no evidence of same. *Id.* at 2. Defendant argues that Plaintiff's subjective belief of discrimination and harassment based on non-race based comments is insufficient to defeat summary judgment, and Plaintiff has presented no evidence of pretext nor even evidence that it employed a progressive discipline policy. *Id.* at 4-8.

## III.    APPLICABLE LAW AND ANALYSIS

### A. Rule 56 Standard

Rule 56 mandates that summary judgment be issued "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[7]    When the moving party carries its initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine issue of a material fact.  If, however, the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[8]  Summary judgment is thus proper if the party opposing the motion fails to establish an essential element of her case.[9]

Summary judgment is not precluded by disputes over facts that are not "material"[10] and disputes that are not "genuine."[11]  "When assessing whether a dispute to any material fact exists, [the court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[12]  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[13]  Likewise, when a party's version of events is "blatantly contradicted by the record," it is not entitled to the benefit of any favorable light.[14]  Thus, the court must resolve factual

---

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

[8] *Celotex*, 477 U.S. at 322-25; *see also Moody v. Jefferson Par. Sch. Bd.*, 2 F.3d 604, 606 (5th Cir. 1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991).

[9] *See Celotex*, 477 U.S. at 322-23.

[10] A fact is material if its resolution could affect the outcome of the action.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (citation omitted).

[11] A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see also Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (citation omitted).

[12] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[13] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10B WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.

[14] *Scott v. Harris*, 550 U.S. 372, 376, 380 (2007) (stating plaintiff's selective description of car chase as "controlled" was contradicted by dashcam footage of the high-speed chase).

controversies in favor of the nonmoving party "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[15]

Only evidence—not argument, not facts in the complaint—will satisfy the burden.[16] Unsworn pleadings, memoranda or the like are not competent summary judgment evidence.[17] Summary judgment affidavits must be based on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated therein.[18] Statements made by affiants without personal knowledge are not capable of being presented in admissible form at trial.[19] Summary judgment affidavits need not, however, use any magic language, provided the affiant's personal knowledge and competence are reasonably inferred from their positions and the nature of their participation in the matters to which they swore.[20] Likewise, generalized testimony of a party's subjective belief is insufficient to create an issue for trial when the beliefs are not substantiated.[21]

In response to a properly supported summary judgment motion, the non-movant must "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-

---

[15] *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted).

[16] *Solo Serve Corp. v. Westowne Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991).

[17] *Larry v. White,* 929 F.2d 206, 211 n.12 (5th Cir. 1991).

[18] FED. R. CIV. P. 56(c)(4).

[19] *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 208 (5th 2018) (citations omitted); *see also McWhirter v. AAA Life Ins. Co.*, 622 F. App'x 364, 366 (5th Cir. 2015) (holding affidavit based on witness's belief rather than personal knowledge is insufficient summary judgment evidence); *Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 881 (5th Cir. 2014) (stating summary judgment affidavit must provide sufficient information to allow the court to conclude that the affiant's assertions are indeed based on personal knowledge, not simply assert that the conclusions are based on personal knowledge); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (holding that conclusory assertions in affidavit could not be relied upon in summary judgment proceedings).

[20] *In re Green*, 968 F.3d 516, 523-24 (5th Cir. 2020) (noting personal knowledge may be inferred based on affiant's "sphere of responsibility"); *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529-30 (5th Cir. 2005) (inferring personal knowledge based on finding that testimony fell within affiant's "sphere of responsibility").

[21] *Bickerstaff v. Whitney Nat'l Bank*, 99 F.3d 1135, 1996 WL 595654, at *3 (5th Cir. 1996); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004); *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 152-53 (5th Cir. 1995) (holding plaintiff's subjective beliefs are not sufficient to create an issue of fact).

movant on all issues as to which the non-movant would bear the burden of proof at trial."[22]  In the absence of proof, the court will not assume the nonmovant could or would prove the necessary facts, and the mere argued existence of a fact dispute will not defeat a properly supported motion.[23]

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.[24]  "If the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate.[25]  Further, in a case scheduled for a bench trial, the district court has "somewhat greater discretion to consider what weight it will accord the evidence when considering summary judgment."[26]  For instance, it may find that there are no genuine issues of material fact, even though that decision depends on inferences to be drawn from what has been incontrovertibly proved.[27]

### B.  Exhaustion of Administrative Remedies

Plaintiff alleges that another employee was promoted in March 2023 and that she was subjected to a negative evaluation on February 3, 2023.  Defendant asserts these claims are time-barred because Plaintiff did not file an EEOC charge until March 1, 2024.  ECF No. 32-1 at 19 (citing ECF No. 32-8 at 94).  Plaintiff argues that she simply signed the final EEOC charge on March 1, 2024, but she contacted the EEOC on October 9, 2023.  ECF No. 41-1 at 10.

---

[22] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citations omitted).
[23] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little*, 37 F.3d at 1075); *Simmons v. Berglin*, 401 F. App'x 903, 905, 908 (5th Cir. 2010) (citing *Anderson*, 477 U.S. at 248); *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005) (citations omitted).  Consistent with Rule 56(e)(2), Fifth Circuit precedent, and this Court's Local Rules, for purposes of this summary judgment motion, the Court deems admitted any fact to which the nonmovant has failed to respond by identifying the evidentiary basis for a genuine dispute of that material fact.
[24] *See Bickerstaff*, 1996 WL 595654, at *2-3 (holding that the evidence "falls within the gambit of subjective speculation and could not prevent summary judgment"); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014) ("No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for non-moving party.").
[25] *Anderson*, 477 U.S. at 249-50 (citations omitted).
[26] *Fed. Trade Comm'n v. ZAAPPAAZ, L.L.C.*, 140 F.4th 675, 680 (5th Cir. 2025) (quoting *Fleming v. Bayou Steel BD Holdings II L.L.C.*, 83 F.4th 278, 293 (5th Cir. 2023)).
[27] *Id.* (citation omitted).

A plaintiff alleging discrimination under Title VII must exhaust administrative remedies before filing suit.[28]  The filing of a timely EEOC charge is a statutory prerequisite to suit under Title VII.[29]  In a deferral state, such as Louisiana, a plaintiff has 300 days from the discriminatory act to file the charge with the EEOC.[30]  Failure to file an EEOC charge within 300 days of the date of any alleged discrete act results in the loss of the ability to recover for the alleged wrong.[31]  "Discrete acts" are acts that occur on a date certain (i.e., termination, failure to promote, denial of transfer, refusal to hire) in contrast to a hostile work environment claim that may manifest over time.[32]  Thus, the failure to file a charge of unlawful discrimination within 300 days of a discrete act, such as a failure to promote, bars a plaintiff from proceeding with a civil action.[33]

The Fifth Circuit has explained that, notwithstanding the requirement that an EEOC charge be in writing, signed, and verified, "a charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of," within 300 days.[34]  But Title VII's exhaustion requirement is subject to equitable tolling[35] when (1) the pendency of a suit between the same parties is in the wrong forum; (2) the plaintiff is unaware of the facts giving rise to the claim because of defendant's intentional concealment of them; and (3) the EEOC misleads plaintiff

---

[28] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002); *see also Jones v. City of Houston*, 756 F. App'x 341, 348 (5th Cir. 2018) (citing 42 U.S.C. § 2000e-5(f)(1)).

[29] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

[30] *Conner v. La. Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007) ("[W]hen a claimant submits an EEOC charge and, pursuant to a work-sharing agreement, the EEOC accepts it on behalf of a deferral state, the claimant is deemed to have initially instituted proceedings with the state agency and the 300–day period is triggered." (citations omitted)); *see also Time Limits for Filing a Charge*, U.S. EQUAL EMP. OPP. COMM'N, https://www.eeoc.gov/time-limits-filing-charge (last visited Apr. 22, 2026).

[31] *See Morgan*, 536 U.S. at 113; *Mennor v. Fort Hood Nat'l Bank*, 829 F.2d 553, 555-56 (5th Cir. 1987); *Taylor*, 296 F.3d at 378-79; *see also Jones*, 756 F. App'x at 348.

[32] *See Morgan*, 536 U.S. at 114-15.

[33]  *See, e.g.*, *Jay v. Int'l Salt Co.*, 868 F.2d 179, 180 n.1 (5th Cir. 1989); *Cook v. Lee Coll.*, 798 F. Supp. 417, 420-21 (S.D. Tex. 1992).

[34] *Weathers v. Houston Methodist Hosp.*, 116 F.4th 324, 329 (5th Cir. 2024) (citing 29 C.F.R. § 1601.12(b)).

[35] *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

about the nature of her rights.[36]  In addition, the court may exclude time delays attributable to the

EEOC when the litigant vigorously pursues her rights and the defendant is not prejudiced.[37]

Plaintiff does not contend that the EEOC overtly misled her,[38] and the other two

circumstances are clearly inapplicable.  And while delay attributable to the EEOC may be excluded

in certain cases, Plaintiff does not provide any evidence that she contacted the EEOC on October

9, 2023, as argued, what efforts she made to vigorously pursue her rights, what the EEOC said in

response to her initial inquiry, when the EEOC scheduled her interview, or when Plaintiff received

the digital charge to sign.  Only evidence, not argument, is sufficient to defeat a properly supported

motion for summary judgment.  A party opposing a properly-supported summary judgment motion

"may not rest upon mere allegations contained in the pleadings, but must set forth and support by

summary judgment evidence specific facts showing the existence of a genuine issue for trial."[39]

Given that Plaintiff offers no evidence as to when she first contacted the EEOC or what

efforts she undertook to vigorously pursue her rights, Plaintiff's failure to promote and retaliatory

evaluation claims are time-barred.

### C.  Title VII:  Discrimination

Title VII of the Civil Rights Act of 1964 prohibits covered employers from discriminating

against any individual with respect to "terms, conditions, or privileges of employment, because of

---

[36] *Weathers*, 116 F.4th at 330 (citing *Melgar v. T.B. Butler Publ'g Co.*, 931 F.3d 375, 380 (5th Cir. 2019) (quoting *Wilson v. Sec'y, Dep't of Veteran Affs. ex rel. Veterans Canteen Servs.*, 65 F.3d 402, 404 (5th Cir. 1995))).

[37] *Id.* at 331-32 (citations omitted).

[38] *Id*. at 330 ("[T]he third [circumstance] cannot apply because [plaintiff] does not contend that the EEOC overtly misled her." (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881 (5th Cir. 2003) ("We apply equitable tolling when an employee seeks information from the EEOC, and the organization gives the individual incorrect information that leads the individual to file an untimely charge."); *Ramirez v. City of San Antonio*, 312 F.3d 178, 184 (5th Cir. 2002) ("It is not sufficient . . . to show that the EEOC failed to give [a plaintiff] some relevant information; [a plaintiff] must demonstrate that the EEOC gave [her] information that was affirmatively wrong."))).

[39] *Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 460-61 (5th Cir. 2024) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255-57)) (affirming summary judgment after rejecting allegations in the complaint and raised in brief and oral argument in the absence of supporting evidence).

such individual's . . . sex."[40]  The issue on a race discrimination claim is not whether the employer treated the plaintiff fairly or even whether its decision was correct or reached in error; the only issue is whether its decision was motivated by unlawful animus because illegal discrimination is different from simple unfair treatment:  "[I]t has long been the law in this [C]ircuit that Title VII . . . does not protect against unfair business decisions, only against decisions motivated by unlawful animus."[41]  "Management does not have to make proper decisions, only non-discriminatory ones,"[42] and Title VII is not a vehicle for judicial second-guessing of business decisions[43] because courts do not try the validity of an employer's good faith belief as to an employee's competence.[44]

Proof of and a finding of discriminatory motive is required.[45]  A plaintiff may prove discriminatory motive through either direct or circumstantial evidence.[46]

### 1. Direct Evidence

Direct evidence is a "statement or written document showing [the employer's] discriminatory motive on its face."[47]  The evidence must be direct and unambiguous, allowing one to conclude without any inferences or presumptions that an impermissible factor motivated the

---

[40] *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 212 (2015) (quoting 42 U.S.C. § 2000e-2(a)(1)).

[41] *Nieto v. L&H Packing Co.*, 108 F.3d 621, (5th Cir. 1997) (citation modified) (quoting *Turner v. Tex. Instruments, Inc.*, 555 F.2d 1251, 1257 (5th Cir. 1977), *overruled on other grounds by Burdine v. Tex. Dept. of Cmty. Affs.,* 647 F.2d 513 (5th Cir. May 1981)).

[42] *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (quoting *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)).

[43] *Bell v. Bank of Am.*, 171 F. App'x 442, 445 (5th Cir. 2006) (quoting *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997)); *see also Armendariz*, 58 F.3d at 151 n.7 (holding that establishing the employer's reason as misguided is insufficient; rather "the employee at all times has the burden of proving . . . that those reasons were a pretext for unlawful discrimination").

[44] *Deines v. Tex. Dep't of Prot. & Regul. Servs.*, 164 F.3d 277, 281 (5th Cir. 1999) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)) (holding that the issue is not whether an employer's decision was the correct one, or the fair one, or the best one, but rather, whether it was motivated by discrimination); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

[45] *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citation omitted).

[46] *Id*. (citing *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994)).

[47] *Portis*, 34 F.3d at 329; *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) ("Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." (citation omitted)).

decision.[48]  Vague terms are insufficient to plausibly plead discriminatory intent.[49]  Even when a plaintiff perceives the use of a vague term as discriminatory, that subjective belief, no matter how genuine, cannot provide the basis for relief.[50]

Plaintiff does not contend that anyone at ACBL used unambiguous racial epithets toward her or in connection with the termination decision.  Rather, her discrimination claim is premised on her perception that a co-worker's ringtone used the N-word and that her co-worker cloned her phone to listen to her.

To determine whether comments in the workplace constitute direct evidence of discrimination, courts look to "whether the comments are (1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision."[51]  "Comments that do not meet these criteria are considered 'stray remarks,' and standing alone, are insufficient to defeat summary judgment."[52]  The court's "ultimate focus" in applying the direct-evidence test "is on whether the comments prove without

---

[48] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010) (quoting *EEOC v. Texas Instruments*, 100 F.3d 1173, 1181 (5th Cir. 1996)).

[49] *See, e.g.*, *Burrell v. Lab. Ready, Inc.*, No. 09-227, 2012 WL 1565360, at *5 n.13 (M.D. La. Mar. 30, 2012), (stating that the phrase "you peoples" is not indicative of racial animus and plaintiff's subjective belief otherwise is insufficient), *R.&R. adopted*, 2012 WL 1565620 (M.D. La. Apr. 30, 2012); *Stone v. Parish of E. Baton Rouge*, No. 06-401, 2008 WL 4534374, at *7 (M.D. La. Sept. 30, 2008) (holding that that there is nothing directly or indirectly race-based about the words "you people"), *aff'd*, 329 F. App'x 542 (5th Cir. 2009); *Maldonado v. FirstService Residential, Inc.*, No. 20-1484, 2021 WL 2517542, at *7 (S.D. Tex. June 18, 2021) (finding the phrases "those people" and "these people" were insufficient to state a § 1981 claim (citation omitted)); *Badaiki v. Schlumberger Holdings Corp.*, No. 20-2216, 2021 WL 6010580, at *6 (S.D. Tex. Aug. 23, 2021) (citations omitted), *R.&R. adopted*, 2021 WL 5542144 (S.D. Tex. Nov. 26, 2021), *R.&R. adopted*, 2021 WL 5769276 (S.D. Tex. Dec. 6, 2021); *McLaurin v. Waffle House, Inc.*, 178 F. Supp. 3d 536, 549 (S.D. Tex. 2016) (citation omitted); *see also Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 420 (5th Cir. 2009) (finding vague comments insufficient to establish discrimination).

[50] *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (citing *Little v. Republic Refining Co.*, 924 F.2d 93, 96 (5th Cir. 1991)).

[51] *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir. 2015) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001)).

[52] *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (citations omitted).

inference or presumption that [the protected characteristic] was a basis in employment decisions' at [the plaintiff's workplace]."[53]

Considering the totality of the circumstances of the evidence submitted on summary judgment, including listening to the audio recording, the audio does not reflect the use of the N-word.  Plaintiff has not presented direct evidence of discrimination.

### 2.  Indirect/Circumstantial Evidence

Indirect evidence of discrimination is established using the burden-shifting framework of *McDonnell Douglas*.[54]  This requires that plaintiff initially establish a prima facie case by carrying her summary judgment burden to show genuine disputes of material fact over whether she (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group, was treated less favorably than other similarly situated employees outside the protected group, or was otherwise discharged because of her protected trait.[55]

A plaintiff who proffers "a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken under nearly identical circumstances."[56]  Specifically, "[t]he employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."[57]  While the plaintiff must show that a

---

[53] *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 187 (5th Cir. 2018) (citation modified).
[54] *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03 (1973).
[55] *E.g.*, *Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 381 (5th Cir. 2018); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *see also Nguyen v. Univ. of Tex. Sch. of Law*, 542 F. App'x 320, 323 (5th Cir. 2013).
[56] *Lee*, 574 F.3d at 260 (citation modified); *see also Santos v. Wincor Nixdorf, Inc.*, 778 F. App'x 300, 303 (5th Cir. 2019).
[57] *Lee*, 574 F.3d at 260.

comparator was treated more favorably in nearly identical circumstances, she need not prove that the circumstances were identical to her own in every way.[58]

Plaintiff readily establishes the first and third elements of the prima facie case: she is a member of a protected group and she was discharged by her employer. She has not presented evidence, however, to establish that she was replaced by someone outside her protected group, was treated less favorably than similarly situated employees outside the protected group, or was otherwise discharged because of her protected trait. As such, Plaintiff has failed to establish a prima facie case of discrimination based on indirect evidence.

### 3. __Legitimate Business Reasons__

If a plaintiff establishes all four elements of *McDonnell Douglas,* a presumption of discrimination arises, and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination.[59] Despite its argument that Plaintiff failed to establish a prima facie case, ACBL has articulated its legitimate business reason for termination: Plaintiff had failed to communicate with her supervisor, exhibited antagonistic behavior toward her co-workers, refused to cooperate, and created an environment harmful to productivity, primarily based on her belief that her co-workers were secretly recording her via a cloned telephone which she reported to the police and FBI.

If the employer proffers a legitimate non-discriminatory reason for its decision, the presumption of discrimination "simply drops out of the picture," and the burden returns to the plaintiff to prove that the defendant intentionally discriminated against her because of her protected characteristic.[60] A plaintiff may carry that burden by establishing pretext, either through evidence

---

[58] *See id*. at 260-61.
[59] *Harville v. City of Houston*, 945 F.3d 870, 875 (5th Cir. 2019).
[60] *Hicks*, 509 U.S. at 510-11 (citations omitted).

15

of disparate treatment, by showing that the employer's proffered explanation is false or unworthy

of credence,[61] i.e., that the employer's articulated reasons were not its true reasons, but are a pretext

for discrimination,[62] or that a "motivating factor" was the plaintiff's protected characteristic.[63]

The anti-discrimination laws do not ask a court to sit as a super-personnel department that

reexamines an entity's business decisions or the wisdom of those decisions but rather to address

only whether those decisions are the result of discrimination.[64]  Thus the issue at the pretext stage

is not whether the employer's reason was correct or fair, but whether the decisionmaker honestly

believed the stated reason.[65]  Plaintiff must create an issue regarding whether "the employer

honestly believes in the reasons it offers, not whether [the employer] made a bad decision."[66]  The

court should not weigh the wisdom of particular employment decisions nor question every

management decision and work assignment.  The single issue is whether the employer's decision

was motivated by discrimination.[67]

A plaintiff's prima facie case, "combined with sufficient evidence to find that the

employer's asserted justification is false, may permit the trier of fact to conclude that the employer

unlawfully discriminated."[68]  It is not enough, however, to *dis*believe the employer; the plaintiff's

explanation of intentional discrimination must be believed, as the ultimate issue is whether the

---

[61] *Harville*, 945 F.3d at 879 (citation omitted).

[62] *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015) (quoting *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000))).

[63] *Sacchetti v. Optiv Sec., Inc.*, 819 F. App'x 251, 253-54 (5th Cir. 2020) (quoting *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016)).

[64] *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 212 (5th Cir. 2018) (citations omitted); *Harris v. Double G. Coatings, Inc.*, 114 F.3d 1184, 1997 WL 255619, at *2 n.4 (5th Cir. 1997) (citing *Ruby v. Springfield R-12 Pub. Sch. Dist.*, 76 F.3d 909, 912 n.7 (8th Cir. 1996)).

[65] *Harville*, 945 F.3d at 877 (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) ("The issue at the pretext stage is whether Appellee's reason, even if incorrect, was the real reason for Appellant's termination.")); *Goudeau,* 793 F.3d at 476 (citation omitted).

[66] *Harris,* 1997 WL 255619 at *2 n.4, (citation omitted).

[67] *See McVille v. Inter-Cmty. Healthcare, Inc.*, 460 F. App'x 353, 355 (5th Cir. 2012) (citing *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995); *Deines*, 164 F.3d at 281).

[68] *Reeves*, 530 U.S. at 148; *Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 319 (5th Cir. 2020) (citation omitted); *see also Hicks*, 509 U.S. at 511.

defendant intentionally discriminated against the plaintiff.[69]  Thus, the plaintiff is not relieved of her burden to present evidence that will permit a rational factfinder to infer intentional discrimination.[70]  Even in the face of sufficient evidence for a reasonable factfinder to find pretext and reject the nondiscriminatory reason, if no rational factfinder could conclude that the action was discriminatory, such as when the record conclusively reveals some other, nondiscriminatory reason for the decision, or if the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue and there is abundant and uncontroverted independent evidence that no discrimination occurred, summary judgment will be proper.[71]

Termination of an employee who continues to accuse co-workers of cloning her phone and recording her after the company's IT Department and third-party investigators found no evidence of same and other behavior that caused employees to feel unsafe is a legitimate business reason for termination.  To overcome ACBL's legitimate business reason for termination, Plaintiff must do more than argue that it was wrong.  She must present "substantial evidence" that its legitimate, nondiscriminatory reason for termination is pretextual.[72]

Plaintiff argues pretext and discriminatory intent based on the absence of any prior disciplinary action and ACBL's failure to follow a progressive discipline policy.  ECF No. 41-1 at 12-14.  While an employer's deviation from its typical procedures can imply discrimination,[73] an employer's failure to follow a progressive discipline policy is only probative of discriminatory

---

[69] *Hicks*, 509 U.S. at 519.

[70] *Harville*, 945 F.3d at 877 (citing *Reeves*, 530 U.S. at 153 (noting that the "ultimate question" in cases alleging employment discrimination "is whether the plaintiff was the victim of intentional discrimination" and reminding that "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff")).

[71] *Id.*

[72] *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015) (citation omitted).

[73] *Warren v. Fed. Nat'l Mortg. Ass'n*, 733 F. App'x 753, 760-61 (5th Cir. 2018) (citing *Miller v. Raytheon Co.*, 716 F.3d 138, 146 (5th Cir. 2013)); *Goudeau*, 793 F.3d at 477 (recognizing that failure to follow that system may give rise to inferences of pretext when an employer opts to have that system).

intent when the plaintiff has proof that the employer has a progressive discipline policy and that policy was applied differently to others outside the protected class.[74]

Plaintiff's failure to introduce evidence that ACBL employs a progressive discipline policy or that it applied that policy differently to any member outside the protected class undermines her argument that ACBL's legitimate business reason for termination was pretextual.

### D.  Title VII:  Hostile Environment

In addition to protecting employees from race discrimination in the workplace, Title VII also makes it unlawful for employers to require "people to work in a discriminatorily hostile or abusive environment."[75]  "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'"[76]

A hostile work environment claim requires the plaintiff to establish that (1) she is a member of a protected class; (2) she suffered unwelcomed harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment "affected a term, condition, or privilege of employment"; and (5) "the employer knew or should have known" about the harassment and "failed to take prompt remedial action."[77]  For harassment to affect a term, condition, or privilege of employment, it "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[78]  In other words, the workplace is

---

[74] *Keller v. Coastal Bend Coll.*, 629 F. App'x 596, 602 (5th Cir. 2015), (rejecting pretext based on failure to follow progressive discipline where plaintiff failed to introduce evidence of such policy); *Taylor v. Peerless Indus. Inc.*, 322 F. App'x 355, 367 (5th Cir. 2009) (rejecting pretext based on failure to follow progressive discipline absent evidence that employer generally followed disciplinary policy or that it was applied differently to similarly situated employees).
[75] *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 432-33 (5th Cir. 2022) (quoting *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993))). Although this rebuttable inference is not dispositive of this summary judgment motion, it does weigh in favor of granting summary judgment.
[76] *Id*. at 433 (quoting *Morgan*, 536 U.S. at 106 (quoting § 2000e-5(e)(1))).
[77] *West v. City of Houston*, 960 F.3d 736, 741-42 (5th Cir. 2020) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)); *see also Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 298-99 (5th Cir. 2001) (citing *Shepherd v. Comptroller of Pub. Accts. of the State of Tex.*, 168 F.3d 871, 873 (5th Cir. 1999)).
[78] *West*, 960 F.3d at 741-42 (citation omitted).

permeated with discriminatory intimidation, ridicule, and insult such that it alters the conditions of the victim's employment and creates an abusive work environment.[79]

The environment must be both objectively and subjectively offensive (i.e., one that a reasonable person would find hostile or abusive and one that the victim in fact did perceive to be so).[80]   The totality of the employment circumstances determines whether an environment is objectively hostile.[81]   Although no single factor is determinative, pertinent considerations are: (1) "the frequency of the discriminatory conduct"; (2) "its severity"; (3) "whether it is physically threatening or humiliating, or a mere offensive utterance"; and (4) "whether it unreasonably interferes with an employee's work performance."[82]   To that end, federal discrimination laws are not a general civility code prohibiting all types of harassment in the workplace.[83]   "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[84]

Title VII does not protect employees from difficult or demanding managers, nor does it protect them from harsh language by a supervisor.  Rather, Title VII protects an employee from a hostile work environment based on the employee's membership in a protected class.  Harassment based on a protected trait "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[85]   In other words, the workplace must be so permeated with discriminatory intimidation, ridicule, and insult such that it alters the conditions of the victim's employment and creates an abusive work environment.[86]

---

[79] *Harris*, 510 U.S. at 21.

[80] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris*, 510 U.S. at 21-22)); *Aryain v. Wal–Mart Stores of Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008) (quoting *Faragher*, 524 U.S. at 786).

[81] *Harris*, 510 U.S. at 23.

[82] *Id.*; *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007) (citation omitted).

[83] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998).

[84] *Faragher*, 524 U.S. at 788 (citation modified).

[85] *West*, 960 F.3d at 741-42 (citation omitted).

[86] *Harris*, 510 U.S. at 21.

Generalized harassing statements and incidents that do not center on the protected characteristic are insufficient.[87]

Plaintiff identified 21 alleged incidents of harassment during her deposition:

**(a) Wayne Ledet made a comment to Ms. Harris that Mr. Phillips was a racist and she would not get a promotion.**

(b) Mr. Phillips intentionally moved Lindsay Thompson's desk behind Ms. Harris. Ms. Thompson cussed, had an attitude, and would take her frustration out on Ms. Harris. Mr. Phillips knew Ms. Thompson was a disruptive coworker and intentionally put her desk behind Ms. Harris.

(c) Mr. Phillips told Ms. Harris's coworkers that she would be working from home because her son was sick.

**(d) Whenever Trey Thoms ringtone would play, other coworkers would laugh.**

**(e) When the ringtone would go off, Katelyn Smith would get up and walk past Ms. Harris's desk laughing.**

(f) Mr. Phillips walked past Ms. Harris's desk and stated, "people are just sitting at their desk getting fatter."

(g) Mr. Phillips stated "Im not that fat" in a work group text message.

**(h) Ms. Harris was the only dispatcher that worked in the office on Martin Luther King Jr. Day.**

(i) Amy Kenney, Kim Moody, and Katelyn Smith asked Ms. Harris if she wanted to be in an office picture for National Women's Day. After Ms. Harris refused, the three women started whispering and laughing.

(j) Amy Kenney failed to put Ms. Harris on a holiday call-out list, even though Ms. Harris asked to be added multiple times.

(k) Ms. Harris went to the restroom and when she returned, Katelyn Smith asked if Ms. Harris was on her period.

(l) Ms. Harris went to her car to make a phone call. When she returned, Kurt Keintz stated that Ms. Harris walked out to her car where she thinks they can't all hear her, then the coworkers all laughed.

(m) Kurt Keintz would dance in Ms. Harris's face.

(n) Ms. Harris went to the restroom and Katelyn Smith made the comment "they're listening to her conversations, and she don't even know."

(o) Ms. Harris's coworkers cloned her personal cell phone, and they were listening in on her personal conversations.

(p) Mr. Keintz asked Ms. Harris if she got out of the bed to go pee in the middle of the night.

(q) Mr. Keintz told Ms. Harris that she smelled good and coworkers laughed.

(r) During the investigation of Ms. Harris's complaints, Lisa Swan was treating Ms. Harris unfairly and covering up for the employees that were the basis of the complaints.

---

[87] *Clark v. City of Alexandria*, 116 F.4th 472, 481 & n.12 (citing *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012) (We "do not consider the various incidents of harassment not based on race.")).

(s) Mr. Keintz locked Ms. Harris out of the Tow Works system over a weekend, which would force Ms. Harris to go into the office to do her work.

(t) Holly Haydel made a comment about Ms. Harris's nails stating that "you must not clean."

**(u) Ms. Smith saw a missing black boy on the news and asked Ms. Harris if she knew the people involved.**

ECF No. 32-2 ¶ 30 at 4-6 (emphasis added). Most of these incidents have no racial overtones. For instance, while Plaintiff subjectively believed that her phone was cloned and her co-workers did so based on discriminatory animus, Plaintiff submitted no evidence whatsoever that her phone was cloned or that she was recorded. Further, ACBL's investigation did not uncover any such conduct. Plaintiff's subjective belief that her phone was cloned and conclusory assertion that same occurred because she is African American is insufficient to defeat a properly supported summary judgment motion, particularly given the absence of any forensic evidence establishing that her phone was cloned.

Only the 5 highlighted incidents (a, d, e, h, u) have any potential racial overtones, and the combination of all of them are insufficient to establish an objectively hostile work environment. Item (a) indicates that a co-worker told Plaintiff her supervisor was a racist and would not promote her. Setting aside the undisputed fact that Plaintiff's supervisor not only hired her in 2017 but also promoted her to the Associate Dispatcher 2 position,[88] this co-worker's opinion critical of Plaintiff's supervisor is not the type of offensive statement necessary to support a hostile environment claim. Items (d) and (e) both relate to the alleged N-word ringtone. While repeatedly being subjected to a ringtone using the N-word may well rise to the level necessary to establish a

---

[88] The same actor inference creates a rebuttable presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue. *Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 421-422 (5th Cir. 2009) (citing *Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 546 (5th Cir. 1996)); *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 320 n.3 (5th Cir. 1997) (same); *see also Webber v. Leson Chevrolet Co.*, No. 24-30637, 2025 WL 3218680, at *5 (5th Cir. Nov. 18, 2025) (citing *Allen v. U.S. Postal Serv.*, 63 F.4th 292, 304 (5th Cir. 2023); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 228 n.16 (5th Cir. 2000) ("The 'same actor' inference arises when the individual who allegedly discriminated against the plaintiff [also] hired the plaintiff and gives rise to an inference that discrimination was not the motive behind plaintiff's termination.")).

severe or pervasive hostile environment, Defendant submitted the ringtone as part of its summary judgment motion. After listening to the ringtone several times, the evidence does not support Plaintiff's assertion that the ringtone used the N-word. That leaves items (h) (being the only person to work in the office on Martin Luther King day) and (u) (being asked whether she knew a missing black boy). These two incidents are far from that necessary to establish a severe or pervasive hostile work environment.

Considering the totality of the circumstances and all of the evidence introduced in favor of and in opposition to the summary judgment motion, Plaintiff has not established a race-based, objectively severe or pervasive hostile environment as necessary to support a harassment claim.

### E. Title VII: Retaliation

An employee bringing a Title VII retaliation claim must first produce evidence of a prima facie case of retaliation: (1) the employee engaged in an activity that Title VII protects; (2) the employee was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action.[89] The Fifth Circuit has also described the elements of a prima facie case as requiring the plaintiff to show: (1) that he engaged in protected activity; (2) that the employer knew about the protected activity; and (3) the employer retaliated against him because of the protected activity.[90] Once an employee establishes a prima facie case, "the burden shifts to the employer to state a legitimate, non-retaliatory reason for its

---

[89] *Abbt v. City of Houston*, 28 F.4th 601, 610 (5th Cir. 2022) (citing *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002)); *Johnson v. Pride Indus., Inc.*, 7 F.4th 392, 407-08 (5th Cir. 2021) (citation omitted). For purposes of retaliation claims, "adverse employment actions" are not limited to employer actions and harm that impact employment and the condition of the workplace because Title VII's antiretaliation provision seeks to secure a nondiscriminatory workplace "by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the [Title VII's] basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006).

[90] *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019) (citing *United States ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 332 (5th Cir. 2017); *United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 323 (5th Cir. 2016)).

decision."[91]    After the employee provides that benign reason, "the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation."[92]

An employee has engaged in activity protected by Title VII if she has either (1) opposed a practice made unlawful by Title VII or (2) made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under Title VII.[93]  "[T]he opposition clause does not require opposition alone; it requires opposition of a practice made unlawful by Title VII."[94] Thus, an employee "cannot simply complain that [s]he received unfair or undesirable treatment."[95] Under Fifth Circuit precedent, a vague complaint, without reference to an unlawful employment practice under Title VII, does not constitute protected activity.[96]  The employee must refer to conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its alleged discriminatory practice.[97]

A retaliation claim requires only that a plaintiff to establish a "materially adverse" action, i.e., an action that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."[98]  This requirement of materiality is necessary to separate "significant from trivial harms."[99]   It does not encompass "'petty slights, minor

---

[91] *Id.* (quoting *Solvay Pharms.*, 871 F.3d at 332 (citation omitted)).

[92] *Id.*

[93] *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)); *see also Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372-73 (5th Cir. 1998) (quoting same).

[94] *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016) (citation omitted).

[95] *Carter v. Target Corp.*, 541 F. App'x 413, 418 (5th Cir. 2013) (citing *Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007)).

[96] *Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (citing *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008) ("Complaining about unfair treatment without specifying why the treatment is unfair, however, is not a protected activity"); *Harris-Childs v. Medco Health Sols., Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (affirming summary judgment on retaliation claim where plaintiff never "specifically complained of racial or sexual harassment, only harassment")).

[97] *Allen v. Envirogreen Landscape Profs., Inc.*, 721 F. App'x 322, 326-27 (5th Cir. 2017) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007)).

[98] *White,* 548 U.S. at 57; *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015) (quoting *White*, 548 U.S. at 57);

[99] *Aryain,* 534 F.3d at 484 (quoting *White*, 548 U.S. at 68); *accord.  Keenan v. Tejeda*, 290 F.3d 252, 258 n.4, 259 n.5 (5th Cir. 2002) (citations omitted); *see also Marchman v. Crawford*, 726 F. App'x 978, 985 (5th Cir. 2018);  *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999).

annoyances, and simple lack of good manners' that employees regularly encounter in the workplace."[100]   To determine whether an action is "materially adverse," courts consider whether the action affected "job title, grade, hours, salary, or benefits" or caused "a diminution in prestige or change in standing among . . . co-workers."[101]   The focus is on the objective qualities of the position, rather than the employee's subjective preference for one position over another.[102]   Thus, the action must be objectively adverse: "A plaintiff's subjective perception that a demotion has occurred is not enough."[103]   Simply being chastised by a superior[104] or subjected to heightened scrutiny[105] is generally not materially adverse and thus insufficient to establish retaliation.

Ultimately, retaliation must be proved according to traditional principles of but-for causation.[106]   At the prima facie stage, however, the "causal connection" between the protected activity and materially adverse action may be established by showing close enough timing between the two events.[107]   But adverse action that occurs before a "protected activity" cannot form the basis of a retaliation claim.[108]   Similarly, the causation prong necessarily requires proof that the

---

[100] *Aryain*, 534 F.3d at 485 (quoting *White*, 548 U.S. at 68).

[101] *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (citation omitted).

[102] *Hunt v. Rapides Healthcare Sys.*, *LLC*, 277 F.3d 757, 771 n.8 (5th Cir. 2001), *abrogated on other grounds by Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702 (5th Cir. 2016).

[103] *Alvarado v. Tex. Rangers*, 492 F.3d 605, 614 (5th Cir. 2007) (citation modified), *abrogated on other grounds by Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir. 2023) (en banc).

[104] *Credeur v. La. through Off. of Att'y Gen.*, 860 F.3d 785, 798 (5th Cir. 2017) (citing *Stewart*, 586 F.3d at 332).

[105] *Magiera v. City of Dallas*, 389 F. App'x 433, 437-38 (5th Cir. 2010); *see also King v. Louisiana*, 294 F. App'x 77, 84-85 (5th Cir. 2008) (holding rudeness and unfriendliness by a supervisor and a co-worker, "unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment do not constitute actionable adverse employment actions" (citing *White*, 548 U.S. at 68; *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000))); *Earle v. Aramark Corp.*, 247 F. App'x 519, 524 (5th Cir. 2007) (finding disciplinary write-ups and micro-managing of plaintiff's performance not materially adverse (citing *White*, 548 U.S. at 68)); *Grice v. FMC Techs. Inc.*, 216 F. App'x 401, 404, 407 (5th Cir. 2007) (holding unjustified reprimands are "trivial" and not materially adverse; supervisor's increased scrutiny would not dissuade reasonable employee from reporting discrimination).

[106] *Willis v. Napolitano*, 986 F. Supp. 2d 738, 748 (M.D. La. 2013) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 358-360 (2013)), *aff'd sub nom.*, *Willis v. United States*, 576 F. App'x 340 (5th Cir. 2014).

[107] *Garcia,* 938 F.3d at 241 (citing *Feist v. La., Dep't of Just., Off. of Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013); *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)); *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020), as revised (Aug. 14, 2020) ("The protected act and the adverse employment action must be very close in time to establish causation by timing alone." (citation modified)).

[108] *Watkins v. Tex. Dep't of Crim. Just.*, 269 F. App'x 457, 461 (5th Cir. 2008) (holding that actions cannot be retaliatory if they predate the protected activity).

24

employer actually knew about the employee's protected activity.[109]  If the employer is unaware of an employee's protected conduct at the time of the materially adverse action, then such action plainly cannot be in retaliation for that protected conduct.[110]

After the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its decision.  After the employer provides its legitimate, non-retaliatory reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext.  Under *Nassar*, a stronger causal connection must be established at the pretext stage.[111]  Specifically, the plaintiff must establish that, "but for" the protected activity, the adverse action would not have occurred.[112]  And while temporal proximity alone may establish causation for a prima facie case of retaliation, the Fifth Circuit has "affirmatively rejected[ed] the notion that temporal proximity standing alone can be sufficient proof of but for causation,"[113] and the relationship must be "very close" relationship.[114]

The evidence establishes that Plaintiff made no complaint regarding race-based issues that could constitute protected activity until September 2023, and she was terminated on May 13, 2024.[115]  In Opposition to Defendant's summary judgment, Plaintiff offers no evidence to support

---

[109] *Robinson v. Jackson State Univ.*, 714 F. App'x 354, 360 (5th Cir. 2017) (rejecting "general corporate knowledge" argument and requiring proof of actual knowledge by the decisionmaker (citation omitted)).

[110] *Id.* (quoting *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999)).

[111] *See* 570 U.S. at 360.  The functional difference between the causation inquiries in the prima facie and pretext analyses is not the type of evidence used, but rather, that the burden at the pretext stage is more stringent.  *Medina v. Ramsey Steel Co.,* 238 F.3d 674, 685 (5th Cir. 2001) (citation omitted).

[112] *Garcia*, 938 F.3d at 243 (holding *Nassar*'s heightened but-for causation requirement applies only at the pretext stage); *see also Williams v. B R F H H Shreveport, L.L.C.*, 801 F. App'x 921, 925 (5th Cir. 2020) (same); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (noting that the more stringent "but for" standard applies to the pretext issue after the employer had identified its legitimate business reason).

[113] *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

[114] *See Decou-Snowton v. Jefferson Parish*, No. 24-30079, 2024 WL 4879466, at *5 (5th Cir. Nov. 25, 2024) (per curiam) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001 (holding that a three-month period is too long).

[115] ECF No. 32-2 ¶¶ 18, 70.

25

her assertion that she was discharged in retaliation for protected activity.  Again, evidence, not argument, is required in response to a properly supported summary judgment motion.

Even assuming that an 8-month period is sufficient temporal proximity to satisfy the causation prong for the prima facie case,[116] once ACBL identified its legitimate business reason for termination (i.e., Plaintiff's own conduct in accusing co-workers of secretly recording her, cloning her phone, and failure to communicate and disrespect to her direct supervisor as the basis for the termination), the burden shifts to Plaintiff to establish that the employer's reason is actually a pretext.  Under *Nassar*, a stronger causal connection must be established at the pretext stage.[117] Specifically, the plaintiff must establish that, "but for" the protected activity, the adverse action would not have occurred.[118]  Temporal proximity is insufficient.

While Plaintiff disputes the other employees' account of her conduct and disagrees with ACBL's assessment, those disagreements do not defeat a properly supported summary judgment because the issue is not whether the other employees' accounts are accurate or whether ACBL's decision was correct; rather, the issue is whether ACBL had a good faith basis to believe same. Given the evidence adduced in support of summary judgment, including Plaintiff's admission to secretly recording her co-workers, reports that her co-workers were cloning her phone despite the absence of any evidence to support same, and curt and disrespectful exchange with her supervisor regarding her illness and coverage, as well as Plaintiff's failure to provide any evidence to establish

---

[116] *Cf. Garcia*, 938 F.3d at 241 (citing *Feist*, 730 F.3d at 454; *Swanson*, 110 F.3d at 1188); *Brown*, 969 F.3d at 578 ("The protected act and the adverse employment action must be very close in time to establish causation by timing alone.").

[117] *See* 570 U.S. at 360. The functional difference between the causation inquiries in the prima facie and pretext analyses is not the type of evidence used, but rather, that the burden at the pretext stage is more stringent.  *Medina*, 238 F.3d at 685 (citation omitted).

[118] *Garcia*, 938 F.3d at 243 (holding *Nassar*'s heightened but-for causation requirement applies only at the pretext stage); *see also Williams*, 801 F. App'x at 925; *Evans*, 246 F.3d at 354.

that ACBL's stated reasons for its decisions were not its true reasons, are unworthy of credence, or not a good faith belief, Plaintiff's retaliation claims fail.

Plaintiff simply has not established that, "but for" her protected activity, she would not have been terminated. In short, no rational factfinder could conclude that, "but for" Plaintiff's protected activity, she would not have been terminated, particularly in light of the conflicts and accusations with co-workers and Plaintiff's continued subjective belief that her co-workers were recording her conversations and cloning her phone.

## IV.    CONCLUSION

ACBL has filed a properly supported summary judgment motion, citing evidence to support its factual assertions. Although Plaintiff raises numerous arguments in opposition to the motion, she fails to introduce any evidence to support her assertions or otherwise create a genuine issue as to any material fact.

Based on the summary judgment evidence, I find that Plaintiff's failure to promote and negative evaluation retaliation claims are time-barred. I also find that Plaintiff has not established a prima facie case that her supervisor's decision to terminate her employment was motivated by her race rather than her conduct, particularly given that this same supervisor previously hired and promoted her, and even if she had, ACBL has articulated its legitimate business reason for termination and Plaintiff has not introduced evidence to establish pretext. Further, I find that Plaintiff has not established that she was subjected to a racially hostile work environment.

Accordingly, for the foregoing reasons,

IT IS ORDERED that is Defendant American Commercial Barge Line's motion for summary judgment is GRANTED.

New Orleans, Louisiana, this ____6th____ day of August, 2026.

_____
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE